McElroy v. Ludlum.

JOSEPH W. McELROY, appellant,

v.

JAMES LUDLUM and others, respondents.

1. The answer of one defendant cannot have the effect of an answer as against a co-defendant. Admissions contained in the answer of one defendant will be received in evidence against a co-defendant, where the parties stand to each other in such relation that the admissions of the one would be competent evidence against the other; but a co-defendant, having filed a separate answer, is entitled to every defence which his answer will allow to be made under it.

2. If the admissions of a surviving partner with respect to a transaction within the scope of the copartnership, made after the death of his copartner, be competent evidence against the personal representatives of the deceased partner, they are not conclusive.

3. Unless in cases specially provided for in the statute, part performance will not validate a contract invalid by the statute of frauds, so as to enable the party to enforce it by an action upon the contract. The doctrine that part performance of a contract will make valid a contract invalid by the statute, is exclusively the creature of equity, and applies only to contracts relating to land.

4. A party performing services under a contract invalid by the statute of frauds, cannot sue upon the contract to recover compensation for his services. The only remedy in such cases is upon a *quantum meruit* for the value of the service.

5. In an action on a *quantum meruit* to recover the value of services performed under a special contract invalid by the statute of frauds, which stipulates for compensation by the conveyance of property or some other collateral benefit to be conferred, evidence of the value of the property to be conveyed, or the benefit to be conferred, is not competent evidence on the subject of the value of the services rendered.

6. M. entered into a verbal contract with the firm of H. & Co., as superintendent of the business of the firm, for the compensation of one-eighth of the profits of the business, with a guarantee that the one-eighth of the profits should not be less than $3,000 a year. The service was to commence at a day subsequent to the making of the agreement.—*Held*,

(1) That the agreement was within the statute of frauds as an agreement not to be performed within a year from the making thereof.

McElroy *v.* Ludlum.

(2) That M. could not sue on the contract to recover compensation for services performed under the contract, and that, in an action on a *quantum meruit* for the services performed, he could not resort to an account of profits as evidence of the value of his services.

On appeal from a decree advised by Amzi Dodd, esq., advisory master.

*Mr. John R. Emery,* for appellant, cited—

*Story's Eq. Pl.* § *763; Fry on Spec. Perf.* §§ *337, 338; Collyer on Partn.* (*Wood's ed.*) *p. 534* § *345; Merritt* v. *Day, 9 Vr. 32; '2 Phillips's Ev. (5th Am. ed.) *72; Williams* v. *Hodgson, 2 Harr. & J. 474; Disborough* v. *Bidleman's Heirs, 1 Zab. 677; Atkins* v. *Tredgold, 2 Barn. & Cress. 23; Peter* v. *Compton, 1 Smith's Lead. Cas. (6th ed.) 539; Browne on Frauds* § *150; Donellan* v. *Read, 3 Barn. & Ad. 899; Linch* v. *Strawbridge, 2 C. B. '808; Berry* v. *Doremus, 1 Vr. 399; King* v. *King, 1 Stock. 44; Blanton* v. *Knox, 3 Mo. 342; Siggett* v. *Caron, 26 Mo. 221; Watrous* v. *Chalker, 7 Conn. 224; McCue* v. *Smith, 9 Minn. 252; McClellan* v. *Sandford, 26 Wis. 595; Wheeler* v. *Frankenthal, 78 Ill. 124; Fry on Spec. Perf.* §§ *221, 229; Ives* v. *Hazard, 4 R. I. 14; Kay* v. *Kurd, B. Mon. 100.*

*Mr. A. Q. Keasbey,* for Alice Buckingham, cited—

*Smith* v. *Bodine, 74 N. Y. 30; McAndrew* v. *Walsh, 4 Stew. Eq. 331; Nutting* v. *Colt, 3 Hal. Ch. 539; Hargrave* v. *Conroy, 4 C. E. Gr. 281; Bracegirdle* v. *Heald, 1 Barn. & Ald. 722; Covington* v. *Roots, 2 Mee. & W. 248; Snelling* v. *Huntingfield, 4 Tyrw. 606; Dobson* v. *Collis, 1 H. & N. 81; Reade* v. *Lamb, 6 Exch. 130; Hinkley* v. *Southgate, 11 Vt. 428; Lockwood* v. *Burns, 3 Hill 128; Browne on Frauds 287; Brittain* v. *Rossiter, Am. Law Reg., Nov. 1879, 716; 1 Stew. Dig. 582* § *86; Disborough* v. *Bidleman, 1 Zab. 677.*

The opinion of the court was delivered by

DEPUE, J.

The firm of James Horner & Co. was largely engaged in the manufacture of steel, at Pompton, in the county of Pas-

saic.   The firm was composed of James Horner and James Ludlum, and was dissolved, by the death of Horner, on the 9th of June, 1874.   By his will, Horner gave the bulk of his estate to his daughter Alice, the wife of John M. Buckingham, in part for her own use, and in part in trust for her sister, Susan Horner.   Alice Buckingham was made the executrix of the will of her deceased father.   Soon after the death of Horner, disputes arose between the personal representatives of the deceased and the surviving partner, which gave rise to a bill filed in the court of chancery by the executrix, against Ludlum, for the appointment of a receiver and the settlement of the partnership affairs.   On this bill Ludlum was appointed receiver, on the 17th of November, 1874.

The complainant was employed by the firm in 1864, first as a puddler, receiving wages as a workman until September, 1866.   Then he was made foreman, and subsequently superintendent of the works, at a salary for the first year of $1,500, and afterwards, until July 1st, 1869, at the annual salary of $2,000.   For the five years following July 1st, 1869, he received the compensation of $3,000 a year.   He now files this bill against Ludlum as surviving partner and as receiver, and against Mrs. Buckingham as executrix of the last will of James Horner, and against her and Susan Horner as beneficiaries under the will of the deceased, for an account of the partnership, after July 1st, 1869, and the recovery of a share of the profits of the business, alleged to be due him, not as a partner, but by way of compensation for his services in the business of the firm.   In his bill he charges that, on or about the 1st day of July, 1869, an agreement was made by the firm with him, to pay him, as compensation for his services as superintendent, one-eighth of the profits of the business, with a guarantee that the one-eighth of the profits should not be less than $3,000 a year.

Separate answers were filed by Ludlum and by Mrs. Buckingham.   Ludlum was also called as a witness, by the complainant, and is the only witness who was examined

McElroy v. Ludlum.

touching the agreement relied on by the complainant. He testifies that the new arrangement with the complainant was made, by parol, prior to the 1st of July, 1869, to go into effect on that day. It called for yearly services and yearly settlements, and, consequently, was an agreement not to be performed within one year from the making thereof, within the meaning of the fifth section of the statute of frauds. *Bracegirdle* v. *Heald, 1 Barn. & Ald. 722; Snelling* v. *Huntingfield, 1 C. M. & R. 20.*

Ludlum, in his answer, admitted the contract as it was claimed by the complainant, and did not set up the statute of frauds. Mrs. Buckingham, in her answer, denied the existence of such an agreement. Ludlum having admitted the agreement and failing to plead the statute, if he were the sole party to the suit, the defence would be without support. But Mrs. Buckingham, having in her answer, denied the contract, under such denial may require proof of a legal agreement, which, in cases within the statute of frauds, must be an agreement in writing. *Dodd* v. *Wakeman, 12 C. E. Gr. 564.* The answer of Ludlum cannot have the effect of an answer as against the other defendants, for it is a general rule that the answer of one defendant cannot be read as an answer against a co-defendant. The admission contained in the answer of one defendant will be received in evidence as an admission against a co-defendant, when they stand to each other in such relation that the admissions of the one would be competent evidence against the other. *Christie* v. *Bishop, 1 Barb. Ch. 105; 1 Greenl. Ev.* § *148.* If the admissions of Ludlum with respect to a transaction within the scope of the partnership made after the death of his copartner be competent evidence against the personal representatives of the deceased partner (see *Van Remsdyke* v. *Kane, 1 Gall. 630; S. C. on appeal, sub nom. Clark's Ex'rs* v. *Van Remsdyke, 9 Cranch 153; Pritchard* v. *Draper, 1 Russ. & Myl. 191; Crosse* v. *Bedingfield, 12 Sim. 35; Parker* v. *Morrell, 2 Phill. 452; S. C., 2 Car. & Kir. 599; Dale* v. *Hamilton, 5 Hare 369–380, 391, 393; Flanagan* v.

*Champion, 1 Gr. Ch. 51; Disborough* v. *Bidleman, 1 Zab. 677; Merritt* v. *Day, 9 Vr. 32*), they are not conclusive. *Lindley on Partn. 236.* Mrs. Buckingham, having denied the contract, and put the complainant upon such proof as will answer the requirements of the law, is entitled to every defence which her answer will allow to be made under it. And the complainant's cause of action being against the defendants jointly, the bill will be dismissed, if a joint cause of action be not made out.

The master before whom the case was heard in the court below, after an examination of the evidence, reached the conclusion that an agreement definite and complete for a share of the profits of the business was not made out by the complainant. In his view, a general understanding depending upon particular terms and adjustments to be agreed upon on an amicable settlement between the parties, is more compatible with the conduct of the parties and with the proofs in the cause, than the existence of a definite and complete agreement for a share of the profits. A careful examination of the whole case has led my mind to the same conclusion, and I think the complainant should fail in his suit, for want of satisfactory proof of his cause of action.

But if the evidence established the agreement set out in the bill, the complainant would, nevertheless, be debarred of the relief prayed for. The suit is in substance an action to enforce a legal demand. It must, therefore, be decided upon the legal principles by which the right of a party to recover compensation for services rendered, under a contract invalid by the statute of frauds, is determined. Performance of a contract invalid by the statute, will not validate the contract so as to enable a party to enforce it by an action upon the contract. Unless in cases specially provided for in the statute, part performance will not validate the contract at law. The dictum that part performance will make valid a contract invalid by the statute of frauds, is exclusively the creature of equity, and applies only to contracts relating to lands, and does not extend to contracts

relating to other matters. *Birckhead* v. *Cummins, 4 Vr. 44, 50; Brittain* v. *Rossiter, 18 Am. Law Reg. (N. S.) 716.* The only remedy in such cases is by an action on a *quantum meruit* to recover the value of the services.

In *Burlingname* v. *Burlingname, 7 Cow. 92,* it was held that, in action for services performed under a contract invalid by the statute of frauds, the plaintiff should found his action on the special contract. This decision was a plain violation of the letter and spirit of the statute. It was overruled in *King* v. *Brown, 2 Hill 485,* and has been repudiated by an almost unbroken line of decisions. At present, the law is settled that in an action for services performed under a contract invalid by the statute, the plaintiff cannot sue upon the contract; he can only seek his remedy upon a *quantum meruit* for the value of the services rendered. *Smith* v. *Smith's Adm'rs, 4 Dutch. 208; Rutan* v. *Hinchman, 1 Vr. 255.*

Whether the special contract should be admitted as evidence of the value of the services, is a subject that has occasioned considerable diversity of decision. The question was considered by the courts of New York and Pennsylvania, in *King* v. *Brown, 2 Hill 485,* and *Jack* v. *McKee, 9 Pa. St. 235.* In each of these cases the action was for services performed under a parol contract for compensation by the conveyance of lands. In the first case it was held that the value of the land was not the legal measure of damages, but might be introduced for the purpose of ascertaining the value of the services. In the other case the value of the land was adopted as the measure of the damages. Practically, there is little or no difference in the rules propounded in these cases. If evidence of the value of the land is competent, the jury may adopt the value of the land as the value of the services, and thus the same result would be effected. These cases have been overruled by the courts of the states in which they were decided. *King* v. *Brown* was overruled by the court of appeals in *Erben* v. *Lorillard, 19 N. Y. 299.* In that case the plaintiff aided the defendant in negotiating the purchase of land

under a parol agreement that he should be compensated for his services by a permanent lease of the land at an annual rent of eight per cent. upon the purchase price, and it was held that the value of the lease could not be shown for the purpose of proving the value of the plaintiff's services. This holding was re-affirmed in the same case when before the same court, after a retrial (*2 Keyes 567*), and subsequently in *Harsha* v. *Reid, 45 N. Y. 420.*

In *Lish* v. *Sherman, 25 Barb. 433,* the action was upon a contract for services to be performed in the future, and to be paid for in real and personal estate at the death of the employer, and evidence of the value of the property of the testatrix, which was offered for the purpose of fixing the value of the services, was held to have been properly overruled.

*Jack* v. *McKee* was overruled by the supreme court of Pennsylvania, in *Hertzog* v. *Hertzog's Adm'r, 34 Pa. St. 418.* The consequences flowing from an evasion of the salutary rule of the statute are depicted by Justice Woodward, in his opinion in *Hertzog* v. *Hertzog's Adm'r,* in this forcible language. He says: " The disastrous effects of *Jack* v. *McKee* were fully shown in *Beach* v. *McClintock* and *Malann* v. *Ammon.* In *Beach's Case,* a grandson, whose services, as claimed by himself, did not exceed in value $1,800, was permitted to recover a judgment against the administrator of his grandfather for nearly $10,000, which swept the fairest portion of old Nathan Beach's estate from his right heirs. In *Malann's Case,* the entire estate of the decedent, real and personal, was taken from the heir at law and given to a woman whose services, had they been the subject of compensation, would probably have taken but a very small portion of the estate, if, indeed, any of it, in addition to what had already been given her by her benefactress.   These were monstrous cases, but they were thought to be, and they were, necessary sacrifices to the principle of *Jack* v. *McKee.* We are not willing that that principle shall be maintained at such a cost.   It had no foundation in law, as

has been abundantly shown; and, instead of being called for by any public policy, experience, which is the best of all teachers, condemns it, and demands that it be expunged from the law of Pennsylvania."

*Hertzog* v. *Hertzog's Adm'r* was followed and approved in *Ewing* v. *Thompson, 66 Pa. St. 382,* and *Sands* v. *Arthur, 84 Id. 479.* In *Ewing* v. *Thompson,* in an action to recover for services rendered under a parol contract for compensation by a conveyance of land, it was decided that the only issue was the value of the services, and that, upon that issue, the value of the land was irrelevant.

In the courts of other states, the great weight of authority, as exhibited in the later cases, is to the same effect. Thus, in *Fuller* v. *Reid, 38 Cal. 100,* the plaintiff had rendered services in effecting the sale of lands, on a parol promise that he should have a portion of the purchase-money. It was held that the measure of damages in an action for the services was the value of the services, and that evidence of the value of the lands was inadmissible.

In *Emery* v. *Smith, 46 N. H. 151,* the contract between the parties was by parol, for services for two years at $100 for the first year and $200 for the second year. In an action for services performed under the contract, it was held that the contract was within the statute, and was not taken out of the statute by its performance by one side; that recovery for the services must be sought under a *quantum meruit,* and that the agreement was not competent evidence to affect the amount of the compensation recoverable.

The leading case in the English courts is *Earl of Falmouth* v. *Thomas, 1 Cromp. & M. 88,* which was an action for the value of crops under a verbal treaty for a lease of the lands on which they were grown. The contract was held to be within the statute. The defendant having accepted and received the crops, it was held that the plaintiff was entitled to recover their value in *indebitatus assumpsit.* "But," said Lord Lyndhurst, in delivering judgment, "admitting that the defendant is to pay for the crops, he ought to pay

54

for them, not upon the terms and footing of the bargain and sale, but upon a *quantum meruit;* the crops at the time of the bargain and sale were, upon these pleadings, an interest in land; and to allow the plaintiff to recover upon this bargain and sale, and to have the price regulated by it, would be in direct opposition to the statute, because it would be giving effect to an action upon a verbal contract for an interest in lands."

*Smith* v. *Smith's Adm'r, 4 Dutch. 208,* and *Rutan* v. *Hinchman, 1 Vr. 255,* illustrate the course of decision in this state. In the first of these cases, the value of the improvements put upon land by a son under a parol promise by the father that he should have the lands at his father's death, was adjudged to be the proper measure of damages. In *Rutan* v. *Hinchman,* a horse was sold and delivered under a parol agreement to pay for him by $100 in cash, and the conveyance of a lot of land. The money was paid, but the defendant refused to convey the land. The plaintiff counted, in his action, for damages for not conveying the land. It was held that the action was misconceived, and that the appropriate action was for the value of the horse; and the principal reason assigned by the court for reversal was, that, under the pleadings, the jury might have given a verdict for the value of the lands, instead of the value of the animal sold.

The pretext upon which evidence of the class referred to has sometimes been admitted is, that its admission was necessary to prevent fraud. The argument is, that the statute was designed to prevent fraud, and should not be made the means of perpetrating a fraud. But in such cases it is not necessary, in order to prevent fraud, to give the contract effect practically by means of an action. The law accords the injured party full compensation for the value of the consideration he has given on the faith of the contract which his adversary repudiates. However uncertain and incapable of precise valuation the services, rendered under an executory contract invalid by the statute, may have been

McElroy *v.* Ludlum.

when the contract was made, their value has ceased to be uncertain at the time when the action is brought. The services having then been performed, are then capable of exact ascertainment, and their value can easily be estimated upon such evidence as is ordinarily submitted to a jury upon any other issue involving the value of services. Further than this we cannot go, without giving the party the benefit of his contract in his action, although the statute declares that it shall not be enforced by an action. The policy of the statute is to prevent frauds which may be accomplished by setting up contracts of the interdicted class, by parol testimony. That policy is infringed upon equally, whether the contract be used for the purpose of influencing the amount of the recovery, or be made the foundation of the action. Experience shows the danger incident to frittering away, under plausible pretexts, the provisions of a statute which has repeatedly been declared to be one of the wisest laws upon the statute-book.

On this subject a distinction has been taken between executory contracts for services to be rendered in the future, and to be compensated for by the conveyance of property or by some other collateral benefit to be conferred, and contracts in which the parties have themselves agreed upon a certain fixed price to be paid for services to be performed—as, for instance, contracts for labor or other services at a stipulated price or sum, extending beyond a year for performance. In cases of the former class, the value of the property to be conveyed or the benefit stipulated for cannot be received in evidence on the subject of the value of the services, without giving the party the benefit of the contract; and such testimony will be excluded, especially when the value of the equivalent to be rendered is contingent and indeterminate at the time the contract was made. In cases of the latter class the price or sum agreed upon has been admitted in evidence, either as the amount recoverable or as an admission of the value of the services. It is unnecessary to consider cases of the latter class, for in the present

case the complainant seeks to have his contract fulfilled by a decree for the share of the profits which he asserts he contracted for, and the profits which, under that arrangement, might have been realized from the business, were contingent and uncertain at the time the agreement was made, and the evidence could have no pertinency towards showing the actual value of the services rendered by the complainant, which is the only criterion by which to ascertain the amount of the recovery for services performed under a contract invalid by the statute of frauds.

On both the grounds which have been examined, the complainant's suit is not maintainable. His bill is framed directly upon the contract, and the relief prayed for is the enforcement of that contract by an account of the profits of the business, and a decree for the proportional part thereof, the right to which he claims under the contract. If the contract relied upon was sufficiently proved by the testimony produced, it could not be carried into effect because of the statute of frauds.

The decree dismissing the bill should be affirmed, with costs in this court.

                    Decree unanimously affirmed.