21 N.J. Super. 278 (1952)
91 A.2d 158
ANNE K. DEEVY, PLAINTIFF-RESPONDENT,
v.
O. JAMES PORTER, JAMES R. PORTER, WILLIAM H. JERVIS, WILLIS J. PORTER, BRUCE D. McCREARY, VERL J. LOVELL, MARIE J. PORTER, LAURA E. HUDSON, AND BILLIE J. PORTER, PARTNERS, DOING BUSINESS AS PORTER-URQUHART ASSOCIATED-O.J. PORTER & COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued July 21, 1952.
Decided August 22, 1952.
*280 Before Judges SCHETTINO, LLOYD and WOODS.
Mr. David Friedenberg argued the cause of plaintiff-respondent.
Mr. John G. Thevos, by special leave of court, argued the cause for defendants-appellants (Mr. Grover C. Richman, Jr., United States Attorney, attorney).
The opinion of the court was delivered by SCHETTINO, J.S.C.
Defendants appeal from a judgment entered upon a jury's verdict. Plaintiff is the assignee of Nelson Tyrrel and his wife, Mary Elizabeth Tyrrel. The recovery was for damages for breach of an agreement whereby defendants contracted to employ both Mr. and Mrs. Tyrrel.
The damages recovered were not for services rendered but rather for the agreed compensation for the unperformed portion of the contract period, less earnings obtained by Mr. and Mrs. Tyrrel from employment elsewhere after the claimed breach.
Defendants challenge the inclusion of a "per diem" allowance, which the Tyrrels testified was to be paid by defendants in addition to the compensation which was designated as such, and also contend that the amount of the verdict cannot be reconciled with the proof. Neither of these contentions is impressive in the light of the testimony, but we need not discuss them since the defendants' position that plaintiff's claim for relief is barred by the statute of frauds, is, in our view, dispositive of the case.
The Tyrrels testified that on June 2, 1951, an oral agreement was made whereby they were to be employed by defendants *281 for a period of one year beginning at a later date upon their departure for Casablanca. Tyrrel was also to perform, and did perform, services for defendants in the United States prior to the contemplated move abroad. Mrs. Tyrrel's services were to be performed solely in Casablanca. She at no time performed any work for defendants. The breach charged was that defendants refused to give the agreed employment to Mrs. Tyrrel, by reason of which Tyrrel declined to continue, claiming as stated above that the agreement was to employ both and that the joint employment was an essential feature of the agreement. The defendants' version of the facts is sharply different, but the jury could have found the facts to be as we have stated them and for the purposes of this appeal those facts must be accepted. R.S. 25:1-5 provides that:
"No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:

* * * * * * * *
e. An agreement that is not to be performed within one year from the making thereof."
An agreement of employment for a period of one year commencing after the date of the making of the contract is within the statute. LaBett v. Heyman Bros., Inc., 13 N.J. Misc. 832 (Sup. Ct. 1935), affirmed on opinion below, 117 N.J.L. 115 (E. & A. 1936); Dolan v. Miller, 13 N.J. Misc. 543, 179 A. 619 (Sup. Ct. 1935); McElroy v. Ludlum, 32 N.J. Eq. 828 (E. & A. 1880).
Plaintiff does not quarrel with this rule, but claims that the contract here proved falls beyond it because the Tyrrels, according to their testimony, had an agreed right to terminate the employment at any time within the year and hence, plaintiff argues, the contract could have been performed within a year. Defendants make a two-fold answer to this position. They contend, first, that the testimony of the *282 Tyrrels revealed, not a right to terminate, but an agreed immunity from liability if they should breach the contract, and, second, that an option to terminate does not legally suffice to deny the bar of the statute. The trial court took the view that the jury could find from Tyrrels' testimony that they had the claimed right to terminate, and we agree that this is so. With respect to the second facet of defendants' position, the trial court accepted plaintiff's version of the law and accordingly submitted to the jury the factual issue as to the existence of the right to terminate. The trial court further charged that part performance of the contract would remove it from the statute. Accordingly, the jury was permitted to bring in a verdict for plaintiff upon a finding either that the Tyrrels had a right to terminate the employment at any time or that there was part performance.
Plaintiff agrees that the doctrine of part performance is inapplicable and accordingly that the trial court erred in this respect. McElroy v. Ludlum, supra (32 N.J. Eq. 828); Barnes v. P. & D. Manufacturing Co., 123 N.J.L. 246 (E. & A. 1939); 37 C.J.S., Frauds, Statute of, sec. 254, p. 773. Plaintiff insists, however, that since defendants did not object to the charge, they may not be heard to complain. We are satisfied, however, that defendants fully apprised the trial court of their disagreement with that proposition when upon their motion for judgment at the conclusion of the case, they objected to the suggestion of the court that the doctrine of part performance was applicable. In these circumstances, a refusal to grant relief because defendants did not again object upon the conclusion of the charge to the jury, would predicate rights upon mere ritual. The reason for the rule requiring objection to be made below is fully satisfied when a litigant plainly states his position to the trial court, and after an adverse ruling upon it does nothing to lead the court to believe that he accepts the ruling as sound. When upon a motion for judgment a defendant urges that the statute of frauds bars recovery, he amply informs the court and the opposing party that he *283 objects to the submission of that issue to the jury upon any basis relating thereto, and may properly complain of the submission of that issue without repeating his position by way of objection to the charge. This situation is accordingly beyond the intended operation of Rule 3:51.
Hence the error involved in sending to the jury the question of part performance requires a reversal without regard to whether the right to terminate would legally suffice to place the contract beyond the statute. We proceed nevertheless to consider the legal effect of the right to terminate, because a reversal without decision upon that point would merely postpone the determination of a crucial issue which the facts inevitably present.
It is obvious that the agreement which plaintiff succeeded below in enforcing against defendants was as to defendants an agreement "not to be performed within one year from the making thereof." The judgment awarded damages for breach of a promise to employ for a period of one year after the making thereof. It is difficult to understand how a right in the employees to terminate the agreement can be a pertinent factor when the holders of that option seek to enforce an unqualified promise of the other party to perform. As to the defendants, the parties here sought to be charged, the obligation pressed against them is no different in quality or consequences than it would be if the employees did not have a right to terminate. The legislative policy embodied in the statute would seem to be equally inexorable in both situations.
Plaintiff argues that if the right of termination were exercised, the agreement could be performed within one year. We think not. It is true that such termination would end the obligations of the parties within a year, but it would not result in the full performance which the contract contemplated, namely, employment for the year. The obligation to perform in every employment contract may be terminated or excused by subsequent events, such as a mutual agreement to terminate or the death of the employee. But the reach of *284 the statute is gauged by the promise intended to be performed, and not by those eventualities, unrelated to the full performance contemplated, which may defeat or excuse that full performance. Although it may be that no distinction can be drawn between the situation in which a plaintiff sues upon the contract for services performed and the situation in which a plaintiff seeks damages for the unperformed period of the contract, yet where the plaintiff, as here, seeks to use the contract as a basis for damages for a period in which no services were rendered, the enforcement of the oral contract in that setting reveals unmistakably that violence would be done to the statute on the basis of the logically irrelevant and factually inconsequential circumstance that the employees could have terminated the agreement.
It is held by the great weight of authority that an agreement which by its terms is not to be performed within one year after its making is within the statute notwithstanding the existence of an option to terminate. 2 Williston on Contracts (Rev. Ed. 1936), sec. 498, p. 1451; 37 C.J.S., Frauds, Statute of, sec. 48, p. 556 and sec. 62, p. 568; cf. Restatement of the Law of Contracts, sec. 198, comment "c". Plaintiff cites Blake v. Voight, 134 N.Y. 69, 31 N.E. 256 (Ct. App. 1892), which holds otherwise, but the New York rule is there acknowledged to be contrary to the view generally adopted and advocated elsewhere. In Raymond Spector, Inc. v. Serutan Co., 60 N.Y.S.2d 212, 213 (Sup. Ct. 1946) affirmed 63 N.Y.S.2d 213 (App. Div. 1946) the court said:
"It is true, as the defendant forcefully points out, that the rule laid down in Blake v. Voight has been the subject of much criticism. It represents the minority view. It is not the law of England (Hanau v. Ehrlich, 1912, A.C. 39); it is rejected by eminent text writers (2 Williston on Contracts, Rev. Ed. Sec. 498, p. 1451; Pollock, The Principles of Contract, 11th Ed. 1942, p. 131; Brown, Statute of Frauds, (5th Ed. Sec. 282); It is not approved in the Restatement of the Law of Contracts (Vol. 1, Sec. 178; Sec. 198, comment c)."
*285 Plaintiff also relies upon Reynier v. Associated Dyeing & Printing Co., 116 N.J.L. 481 (E. & A. 1936) and Spiccia v. Paterson Silk Throwing Co., Inc., 127 N.J.L. 509 (Sup. Ct. 1941). Neither case supports plaintiff's position.
In the Reynier case plaintiff sued to recover upon the contract for services performed. Both parties agreed that the employment was for an indefinite period, terminable at the will of either party rather than for a fixed period of time. Although the agreed rate of compensation was an annual rate, it did not, in the circumstances there shown, import a contract to work for a year or for any other fixed period. So also in the Spiccia case, the employment was upon the mutual will of the parties despite the agreement that a bonus would be paid "on or shortly after June first of each year." In neither case, did the plaintiff assert or seek to enforce a contractual obligation to continue the employment for a definite period, and specifically, there was no claim, as here, of an obligation to employ for a period of time which falls within the statute. In neither case could it be said that the full performance contemplated was within the statute. The statute was inapplicable, not because there was a mutual right to terminate, but rather because the term agreed upon was not within it. The reference in those decisions to the right to terminate was merely by way of description of the indefinite term at the will of the parties. The promise to employ and to work for an indefinite period measured by the will of the parties was the sole promise as to term, and obviously a contract of that kind can be completely performed within a year. The distinction between those cases and the present one is developed in 104 A.L.R. 1006.
On the other hand, Barnes v. P. & D. Manufacturing Co., 123 N.J.L. 246 (E. & A. 1939), militates against plaintiff. The majority of the court there said, at p. 249:
"In Marble v. Clinton, [298 Mass. 87], 9 N.E. Rep. (2d) 522, [111 A.L.R. 1101], the Supreme Judicial Court of Massachusetts held: `Contracts for service for more than a year, subject to termination *286 within a year at the election of a party upon the happening of some event, or even at the mere will of a party, have generally been held to be within the statute. The contemplated performance would occupy more than a year. If the contract should be terminated within the year, the result would not be an alternative form of performance, but excusable non-performance. Doyle v. Dixon, 97 Mass. 208; Radio Corp. v. Cable Radio Tube Corp., 66 Fed. Rep. (2d) 778; Union Car Advertising Co. v. Boston Elevated, &c., 26 Fed. Rep. (2d) 755, [58 A.L.R. 1007]; Hanau v. Ehrlich (1912), A.C. 39; Wagniere v. Dunnell, 29 R.I. 580 [73 A. 309]; Meyer v. Roberts, 46 Ark. 80; Williston, Contracts (Rev. Ed.), § 498.'"
Accordingly, defendants' motion for judgment should have been granted. Since it is apparent that upon retrial plaintiff could not make a showing which would warrant a recovery, the judgment is reversed, without costs, with direction to the trial court to enter judgment in favor of defendants.